UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EBONI COCHRAN, Administratrix,  PLAINTIFF
Estate of Sterling O. Neal, Jr.

v.  CIVIL ACTION NO.3:04CV-302-S

LOUISVILLE METRO GOVERNMENT, et al.  DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court upon the motion of the defendants, Louisville Metro Government ("Metro Government"), Louisville Metro Police Department ("Metro Police"), and Timothy Murphy ("Murphy"), for summary judgment.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-61, S. Ct. 1598, 1606-10, 16 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most

favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## BACKGROUND

Metro Police obtained a warrant to search 323 Cecil Avenue in connection with a drug investigation. Murphy, who at that time was working as a police officer in the Sixth District of Metro Police, requested the warrant following a controlled buy at 323 Cecil Avenue, which he arranged based on information from a confidential informant ("CI"). Immediately prior to executing the warrant, Murphy drove the CI to Cecil Avenue and asked her to identify the house where she made the controlled buy. The CI pointed to 323 Cecil Avenue. However, because the CI informed Murphy that the front of the residence was barricaded, Metro Police determined it was necessary to enter through the back door.

Murphy then drove the CI to the rear of the residence and again asked her to identify the house where she made the controlled buy. She identified 319 Cecil Avenue by mistake. Three-one-nine (319) Cecil Avenue is adjacent to 323 Cecil Avenue; the two homes are separated only by a fence. Officers Armand and Hayes and Sgt. Boyer were assigned to secure the front of 323 Cecil Avenue to prevent anybody from escaping in case the front door was not barricaded. Meanwhile, Murphy and other officers, after knocking and announcing their presence, entered the rear of 319 Cecil Avenue.

At this time, 319 Cecil Avenue was Sterling O. Neal, Jr.'s ("Neal") residence. Neal was laying in his bed reading when the officers entered. Believing the police were intruders, Neal grabbed a knife and went into the hallway. Officer Healey was the first officer to enter 319 Cecil Avenue, and upon encountering Neal, Healey told him to drop the knife and get on the floor. Neal complied and was handcuffed. After being informed by Neal that the officers were in the wrong house, Murphy walked outside the front door and saw Officers Armand and Hayes and Sgt. Boyer standing in front of the house next door. Neal was taken to the kitchen and released from his

handcuffs. The officers apologized to him for the mistake. Neal believes that the time lapse from his being on the floor and his being released from the handcuffs was approximately five minutes. Upon Neal's request, the police left.

Neal alleges no physical injuries as a result of this incident. Metro Police offered to compensate Neal for the damage done to his door but was never taken up by Neal on the offer. Instead, in April 2004, Neal filed this suit pursuant to 42 U.S.C. § 1983 claiming constitutional violations of the First, Fourth, and Fifth Amendments.[1] He also claims violations of Kentucky laws and statutes.[2]

## ANALYSIS

We first address the viability of any claim Neal makes against Metro Police. Defendants assert that Metro Police is not an entity capable of being sued. They are correct. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint." *Id.*). Neal, in his Response brief, agrees. Thus, all claims against Metro Police will be dismissed. We now address those claims Neal has against the remaining defendants, Metro Government and Murphy.

### I. First Amendment

Neal contends that because he is a known social activist in Louisville, Kentucky and has been involved in protests against a former Metro Police chief, Defendants actions deprived him of his rights to freedom of speech and assembly. It appears that Neal is alleging that Defendants

---

[1] Defendants in their Motion for Summary Judgment prophylactically argue that if Neal makes any claims based on the Fourteenth Amendment Due Process Clause, they too must be dismissed on summary judgment. The court, however, is unable to glean such any such claims from Neal's Complaint. Moreover, Neal's Response brief does not mention either expressly or impliedly any due process violations of the Fourteenth Amendment.

[2] Neal died in October 2006 and his estate has since been substituted as Plaintiff in this case. However, for purposes of this motion, the court will refer to Neal in the present tense and consider him the complaining party.

retaliated against him for his prior speech activity. "A plaintiff seeking to establish a case of retaliation for speech protected under the First Amendment must point to evidence sufficient to establish three elements: (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff was subjected to adverse action or was deprived of some benefit; and (3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action" *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

There is no dispute that in March 2000 Neal engaged in protected speech. There is also no dispute, at least for purposes of this motion, that the officers' conduct subjected Neal to adverse action or deprived him of some benefit. However, Neal fails to present evidence sufficient to establish the third factor: that his protected speech was a substantial or motivating factor in the adverse action. In addition to the temporal issue - the officers' entry into his home occurred over three (3) years after his protected speech - Neal offers no support for his contentions that the CI was not reliable and that Murphy failed to verify the CI's claims. His claim that these facts establish pretext on the part of Defendants to invade his First Amendment rights is a conclusory allegation, unable to withstand summary judgment.

## II. Fourth Amendment

Neal also alleges that his Fourth Amendment rights were violated by an unlawful entry and search of his home and a use of excessive force against him. While it is undisputed that the police entered Neal's home without a valid warrant, Neal is unable to show that Defendants were anything more than negligent in their entry and search.[3] "It is now 'firmly settled that injury caused by negligence does not constitute a "deprivation" of any constitutionally protected interest.'" *Stewart*

---

[3] Neal has made a state law claim of negligence. The court does not hold that Defendants were negligent. We merely explain *only for purposes of Neal's Fourth Amendment claim*, that Defendants actions were nothing more than negligent.

*v. City of Middletown*, 2005 WL 1505921, *2 (6th Cir. 2005) (quoting *Lewellen v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 34 F.3d 345, 348 (6th Cir. 1994)).

Neal also fails to demonstrate that excessive force was used against him. Law enforcement officers are permitted to utilize a reasonable amount of force when effecting a seizure. The reasonableness of an officer's use of force is evaluated from the perspective of an objective officer in light of the facts and circumstances confronting that officer. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004). This evaluation is made without regard to an officer's underlying intent or motivation. *Id.* "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ." *Id.*

Defendants admit that Officer Healey pointed his handgun at Neal before handcuffing him. However, both were done in response to Neal's approaching the officers with a knife. As soon as Neal informed the officers they had the wrong house and upon Murphy's immediate confirmation of this, Neal was uncuffed. A reasonable jury could not find that in this situation the amount of force used against Neal was anything but reasonable.

### III. Fifth Amendment

"[T]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Neal concedes that the allegations in his Complaint involve actions of state actors and not the federal government. He also agrees that as such, the Fifth Amendment Due Process Clause is not applicable to his case. Therefore, Neal's claims based on the Fifth Amendment must be dismissed.

### IV. Failure to Train

Neal asserts that Metro Government failed to adequately train and supervise its police officers. Adequacy, or inadequacy, of a police training program can be the basis of § 1983 liability "only where the failure to train amounts to a deliberate indifference to the rights of person with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct.

1197, 103 L.Ed.2d 412 (1989). To have been deliberately indifferent, Metro Government must have taken a "course of action consciously chosen from various alternatives" to adopt an inadequate training program for its officers. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Neal offers no evidence that Metro Government engaged in a policy of deliberate indifference in training its officers. His contention that the comments made by Chief of Police Robert White in "condonation of the actions-at-bar are illustrative of the inadequacy of the police training program," is yet another conclusory allegation, insufficient to defeat summary judgment.

## V. Qualified Immunity

Murphy claims that as a governmental actor he is entitled to qualified immunity. We agree. The initial question for the court when ruling upon whether an officer is entitled to qualified immunity is whether the facts when taken in the light most favorable to the plaintiff demonstrate the officer's conduct violated a constitutional right. *Leonard v. Robinson*, 477 F.3d 347, 354 (6th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.3d2d 272 (2001)). Neal claims that his First and Fourth Amendment rights were violated by the Murphy's conduct. But, as explained above, no constitutional violation occurred. Thus, Murphy is protected by qualified immunity and our inquiry ends. *Saucier*, 533 U.S. at 201.

An issue, however, exists as to whether White has been sued in his individual capacity and if so, whether he is also entitled to qualified immunity. Defendants argue that White was only named in his official capacity. Whether White was also sued in his individual capacity is critical, because when a city official is sued in his official capacity, it is considered to be an action against the city. And, if there is no indication that a defendant is being sued in his individual capacity, the court must assume he is being sued only in his official capacity. *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Neal's original Complaint stated a cause of action against White only in his official capacity. Neal subsequently filed two amended complaints, and at no time is White identified as being sued

- 7 -

in his individual capacity. Thus, the issue of whether White is entitled to qualified immunity is moot. He is not individually a party to this action.

VI. State Law Claims

Neal has made various state law claims against Defendants. Because we must dismiss all claims over which we have original jurisdiction, we decline to exercise supplemental jurisdiction over Neal's state law claims. *See* 28 U.S.C. § 1367(c). Neal's state law claims will be remanded to the state court from which they were removed.

A separate order will be entered in accordance with this opinion.